**B.E.E. INTERNATIONAL, LTD., B.E.E. International, Inc., Tal Shechter, Plaintiffs,**

v.

**Michael HAWES, Nicole Hawes, Belovo Incorporated, Belovo S.A., Defendants.**

**No. 1:02 CV 00212.**

United States District Court, M.D. North Carolina.

June 11, 2003.

---

W. Thad Adams, III, Matthew J. Ladenheim, Adams Evans, P.A., Charlotte, NC, for plaintiffs.

R. Thompson Wright, Joseph Robert Beatty, Hill Evans Duncan Jordan & Beatty, PLLC, Greensboro, NC, for Michael Hawes, Nicole Hawes, Belovo Inc., defendants.

R. Thompson Wright, Hill Evans Duncan Jordan & Beatty, PLLC, Greensboro, NC, Jon L. Roberts, John F. Mardula, Shauna M. Wertheim, Roberts Abokhair & Mardula, LLC, Reston, VA, for Belova SA, defendant.

## MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge.

Plaintiffs B.E.E. International Ltd. ("BEE"), an Israeli corporation; Tal Shechter, one of its principals; and B.E.E. International Inc. ("BEEI"), its U.S. subsidiary, filed this action against Defendants Michael and Nicole Hawes, former employees of BEEI; Belovo Inc., a North Carolina corporation formed by Mr. Hawes; and Belovo S.A., a Belgian corporation with its principal place of business in Bastogne, Belgium. Plaintiffs allege several causes of action, including trademark infringement, unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), breach of contract, quantum meruit, trover and conversion, computer misappropriation, misappropriation of trade secrets, unfair and deceptive trade practices, and unfair competition.[1] This matter is before the court on Defendant Belovo S.A.'s motion to dismiss for lack of personal jurisdiction, improper venue, and insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b). For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

BEE manufactures high-performance emulsifying machines and sells them under the unregistered trademark "DEBEE." Defendant Belovo S.A. primarily manufactures and sells egg-derived food products. During the period relevant to this dispute, BEE relied on other entities to distribute its emulsifying machines in the United States and Europe. BEE incorporated BEEI, a Delaware corporation, in October 1998. In keeping with a previous offer extended by BEE, the new company hired Michael Hawes to market BEE's DEBEE machines in the United States.[2] BEEI

---

1. Plaintiffs initially lodged a patent infringement claim, but the parties have stipulated to its dismissal.

2. In addition to a base salary, Mr. Hawes received a commission on sales of DEBEE products, payable upon receipt of customer payments. The parties dispute whether Mr. Hawes's contract with BEEI permitted him to take a commission on amounts not yet collected from the customer. Plaintiffs assert that when a customer made partial payment, Mr. Hawes was entitled to partial commission proportionate to the amount of that payment. Defendants argue that payment by the customer of any amount entitled Mr. Hawes to a full commission.

also employed Nicole Hawes, Mr. Hawes's wife, as a bookkeeper. In May 1999, BEE entered a contract making Belovo S.A. the exclusive distributor of DEBEE emulsifying machines in Europe. The distribution agreement, which specifies that it must be construed in accordance with Israeli law, provides that all claims for damages "shall be finally settled by the Israeli Institute for Business Arbitration." As part of the agreement, BEE agreed to provide two DEBEE machines to Belovo S.A "at cost."

In June 2001, Belovo S.A. informed BEE that it intended to exhibit a homogenizer machine under the DEBEE trademark at an international trade show in New Orleans. The machine used BEE technology but had been manufactured by Belovo S.A. Although BEE refused to permit the use of the DEBEE trademark, Belovo S.A. exhibited the homogenizer anyway.[3] BEE asked Mr. Hawes to attend the trade show and monitor Belovo S.A.'s activities. BEE contends that Mr. Hawes worked for Belovo S.A. during the trade show, to which he traveled at BEEI's expense.

Plaintiffs' business relationship with Defendants ended in January 2002. On January 2, Mr. Hawes announced his intention to resign from BEEI. (Hawes Dec. ¶ 13.) On January 9, BEE terminated its exclusive distributor agreement with Belovo S.A., demanded the return of all equipment and proprietary information, and instructed Belovo S.A. to stop using trademarks, product names, brand names, and

trade names associated with BEE. The following week, Plaintiff Tal Shechter, a founder and principal of BEE and BEEI, discovered that Nicole Hawes had authorized the transfer of a substantial commission payment to Mr. Hawes on the day he announced his resignation. Plaintiffs also allege that Mr. Hawes improperly retained customer and financial information after he stopped working for BEEI.

In March 2001, ten months before he resigned from BEEI, Mr. Hawes formed Belovo Inc., by changing the name of an existing North Carolina corporation under his control. Between the summer of 2001 and January 2002, when Mr. Hawes left BEEI, he communicated frequently with Belovo S.A.[4] During the same period, Mr. Hawes obtained three permits from the United States Department of Agriculture ("USDA"), which authorize the shipment of Belovo S.A.'s egg products to North Carolina. Two of the permits list Charlotte and Raleigh/Durham, North Carolina, as ports of arrival. In October 2001, Mr. Hawes sent a letter to a potential customer announcing "the opening of [Belovo S.A.'s] USA headquarters, Belovo Inc., located in Pinehurst, North Carolina." (Pls.' Resp. Def.'s Mot. Dismiss Am. Compl. Ex. 8.)

Mr. Hawes had more communications with Belovo S.A. after he left BEEI. Belovo S.A.'s Web site lists Mr. Hawes as the company's "exclusive agent," provides a link to his e-mail address, and directs inquiries originating in the United States to

---

**3.** The following month, Belovo S.A.'s Fabien de Meester approached Plaintiff Tal Shechter, an officer and director of BEE, with a proposed joint venture to produce homogenizers. Mr. Shechter responded that any collaboration must be postponed until after Belovo S.A. shipped its homogenizer machine to BEE. Belovo S.A. complied with this demand. Mr. Shechter rebuffed a second proposed joint venture in January 2002.

**4.** The parties sharply dispute the nature of these conversations. Plaintiffs allege that Mr. Hawes was using BEEI's office space and equipment to carry on Belovo S.A.'s business. Belovo S.A. responds that as BEE's exclusive distributor in Europe, it sought advice from Mr. Hawes, a key employee of BEE's exclusive distributor in the United States.

him in North Carolina. Mr. Hawes had no employment agreement with Belovo S.A. and received no salary from the company. (De Meester Dec. ¶ 3.) Belovo S.A. did inform Mr. Hawes that it would sell its products to him for resale in the United States, but in practice this arrangement has been limited severely by the USDA's decision to restrict the importation of 98% of the company's product line. (*Id.* ¶¶ 3, 8.) Mr. Hawes received one commission from Belovo S.A., but the product was shipped to Wisconsin, not North Carolina. Finally, Mr. Hawes chaired the opening session at Belovo S.A.'s "mini-symposium" on egg science and technology in Washington, D.C., in September 2002. Belovo S.A.'s Web site directed all inquiries concerning the mini-symposium to Nicole Hawes in North Carolina.

## II. DISCUSSION

█ Belovo S.A. moves to dismiss the amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993). When a court decides such a motion without an evidentiary hearing, the plaintiff must prove at least a *prima facie* case of personal jurisdiction. *Id.* at 60. In determining whether a plaintiff has met this burden, the court must resolve all factual disputes and draw all reasonable inferences arising from the pleadings in the plaintiff's favor. *Id.*

█ Two conditions must be satisfied for the court to assert personal jurisdiction over a nonresident defendant: jurisdiction must be authorized by the forum state's long-arm statute, and the exercise of jurisdiction must comport with due process. *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). North Carolina's long-arm statute is interpreted liberally in favor of finding jurisdiction.[5] *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). Following the lead of North Carolina state courts, federal courts consistently have construed the statute as extending jurisdiction to the full extent permitted by the Fourteenth Amendment. *See, e.g., Christian Sci. Bd. of Dirs.*, 259 F.3d at 215 (citing *Century Data Sys., Inc. v. McDonald*, 109 N.C.App. 425, 428 S.E.2d 190 (1993)); *Vishay Intertechnology Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1065 (4th Cir.1982); *Regent Lighting Corp. v. Galaxy Elec. Mfg.*, 933 F.Supp. 507, 509–10 (M.D.N.C.1996); *Crown Cork & Seal Co. v. Dockery*, 886 F.Supp. 1253, 1257 (M.D.N.C.1995). Thus, the statutory inquiry merges with the constitutional inquiry into whether the court's assertion of jurisdiction comports with due process. *Christian Sci. Bd. of Dirs.*, 259 F.3d at 215.

Historically, "limits on personal jurisdiction were grounded in a court's power over the actual person of the defendant," making a defendant's presence in the geographical territory of a state a prerequisite for personal jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710–11 (4th Cir.2002). The requirement of physical presence in a state, however, proved too limited for the demands of modern commerce. Since a person no

---

5. The relevant section of North Carolina's long-arm statute provides for personal jurisdiction in "any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." *N.C. Gen.Stat.* § 1–75.4(1)a.

longer must be physically present in a state to be amenable to personal jurisdiction there, "the establishment of a surrogate for presence has been the core task in defining the due process boundaries of a state's legitimate exercise of sovereignty over a person beyond its borders." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941 (4th Cir.1994).

Due process protects a defendant against being subject to binding judgments in fora where it "has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). To apply this surrogate for actual presence, a court must ascertain that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

To determine whether it may assert personal jurisdiction over a defendant, the court considers "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc.*, 293

F.3d at 712 (internal quotations omitted). The requirement of purposeful availment provides fair warning to potential defendants, allowing them to structure their conduct "with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The "constitutional touchstone" of personal jurisdiction, then, "remains whether the defendant purposefully established 'minimum contacts' in the forum State."[6] *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158). Whether jurisdiction is appropriate must be determined based on the facts and circumstances of each case. *Id.*, 471 U.S. at 478–79, 105 S.Ct. at 2185.

Belovo S.A. is a Belgian corporation with its principal place of business outside the United States. None of its officers or directors reside in North Carolina; it owns no property in North Carolina; none of its products have been sold in North Carolina; it does not maintain an office in the state. Its contract with Plaintiff BEE was neither signed nor performed in North Carolina. *See Ellicott Machine Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir.1993) (observing that out-of-state contract performance mitigates against the assertion of personal jurisdiction in the forum state). Apart from its Web site, discussed below, Belovo S.A.'s contacts with North Carolina all stem from its relationship with Michael Hawes, who

---

**6.** If the defendant's contacts with the forum are not the basis of suit, general jurisdiction may "arise from the defendant's general, more persistent, but unrelated contacts with the State." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). To establish general jurisdiction, the defendant's contacts with the forum must be "continuous and systematic," a more de-

manding standard than is required to establish specific jurisdiction. *Id.; (see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984)). Belovo S.A.'s limited contacts with North Carolina do not qualify as "continuous and systematic." Therefore, Belovo S.A. is not subject to the general jurisdiction of this court.

resides in the state, and Belovo Inc., Mr. Hawes's corporation. It has no contractual relationship with them or any other party in the state. (De Meester Dec. ¶ 3.)

■ Plaintiffs direct the court to several facts that, they argue, demonstrate sufficient contacts. First, Belovo S.A. lists Mr. Hawes, a representative of Belovo Inc., as its "exclusive agent" in the United States. (*Id.*) The significance of this designation stems not from the title itself, but rather from any actual conduct that shows purposeful availment by Belovo S.A. *See Burger King Corp.*, 471 U.S. at 478–79, 105 S.Ct. at 2185; *International Shoe Co.*, 326 U.S. at 319, 66 S.Ct. at 159–60 (explaining that minimum contacts analysis "cannot be simply mechanical," but rather must depend on "the quality and nature of the activity"). The fact that a nonresident corporation has a distributor or representative with contacts in a state does not automatically support the extension of personal jurisdiction over that corporation. *See International Shoe Co.*, 326 U.S. at 317, 66 S.Ct. at 159 ("[T]he casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there."); *DP Envtl. Servs., Inc. v. Bertlesen*, 834 F.Supp. 162, 165 (M.D.N.C. 1993) (holding that the court lacked personal jurisdiction over a nonresident manufacturer based on the minimum contacts of its distributor); *H.V. Allen Co., Inc. v. Quip–Matic, Inc.*, 47 N.C.App. 40, 46–47, 266 S.E.2d 768, 771 (1980) (finding no personal jurisdiction over a nonresident manufacturer despite an agreement with the company's "representative in North Carolina," where the representative operated under a different name and neither took orders nor collected funds in the name of the manufacturer). Based on the record,

Mr. Hawes's status as an "exclusive agent" meant that Belovo S.A. steered product inquiries to Belovo Inc.'s office at Mr. Hawes's North Carolina home address and paid him a commission for selling one product shipped directly to Wisconsin. Plaintiffs did not deal with Mr. Hawes in any agency capacity. In short, although Belovo S.A. bestowed the title of agent on Mr. Hawes, the quality and nature of the company's actual contacts with North Carolina stemming from this relationship were isolated and insufficient to subject it to personal jurisdiction.

Mr. Hawes did, however, act on behalf of his own corporation, Belovo Inc. He changed his corporation's name from Precision Design and Assembly Inc. to Belovo Inc., sought permits to import Belovo S.A.'s egg products as a representative of Belovo Inc., and boasted to a potential customer in Illinois about a close relationship between Belovo S.A. and Belovo Inc. Despite the superficial commonality of their distinctive names, however, Belovo S.A. and Belovo Inc. remain different entities. "[U]nilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958), and nothing in the record suggests that Belovo S.A. intentionally directed Mr. Hawes's activities. Despite Plaintiffs' argument to the contrary, his conduct may not fairly be attributed to Belovo S.A., which provided no financial support to his marketing and sales efforts. (De Meester Dec. ¶ 8.) Accordingly, these acts do not demonstrate that the Belgian corporation purposefully availed itself of "the privilege of conducting activities within [North Carolina], thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240.

Plaintiffs also contend that Belovo S.A.'s electronic contacts with North Carolina subject it to personal jurisdiction. The Fourth Circuit recently provided guidance to district courts trying to determine when a nonresident defendant such as Belovo S.A. conceptually "enters" a forum state by way of the Internet. "Adopting and adapting" a model first articulated in *Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), the court explained that an assertion of personal jurisdiction comports with due process when the nonresident defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan. Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir.2002). The court placed the range of electronic contacts on a "sliding scale":

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of inter-

activity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 713–14 (quoting *Zippo Mfg. Co.*, 952 F.Supp. at 1124). In general, " 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.' " *Id.* at 713 (quoting *Zippo Mfg. Co.*, 952 F.Supp. at 1124).

■ Applying this standard, extending personal jurisdiction over Belovo S.A. based on its electronic contacts would be inappropriate. Under the first prong of the *ALS Scan* analysis, Belovo S.A.'s Web site may be described as "minimally interactive." *See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 218 n. 11 (4th Cir. 2001) (applying this term to a site that "invited visitors ... to e-mail questions and information requests" to the nonresident defendant). The company posts information on its Web site enabling potential customers anywhere in the world to contact an appropriate distributor. For customers in the United States, that contact person is Michael Hawes in North Carolina. The site lists Mr. Hawes's postal address, telephone number, and fax number. It also contains an e-mail link to "Michael Hawes, Belovo U.S. Inc." To the extent that Belovo S.A. hosts Mr. Hawes's e-mail account, this link permits an "exchange of information with the host computer," a capability beyond the mere passive posting of information. *ALS Scan, Inc.*, 293 F.3d at 714 (quoting *Zippo Mfg. Co.*, 952 F.Supp. at 1124). This fact does not, however, show that Belovo S.A. purposefully targets potential customers in North Carolina more or differently than potential customers anywhere else in the United States; indeed, the company has

no customers in North Carolina. It also does not demonstrate that Belovo S.A. used the Internet purposefully "to contact persons within the State," the issue that the *ALS Scan* continuum addresses. *See id.* at 713; *see also Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir.2002) (observing that the *ALS Scan* test probes whether a defendant "manifested an intent to direct [its] website content ... to a [forum state] *audience* ") (emphasis added).

Under the second prong of the *ALS Scan* analysis, Belovo S.A.'s manifested intent is to place potential customers in touch with Mr. Hawes. As explained above, Mr. Hawes's activities are attributed more fairly to Belovo Inc., rather than Belovo S.A. The absence of any employment or contractual relationship between Mr. Hawes and Belovo S.A., and the fact that no Belovo S.A. products have been sold in North Carolina, support this conclusion. Despite Belovo S.A.'s bestowing upon Mr. Hawes the title of "exclusive agent," nothing in the record indicates that the Belgian company either directed his activities or was bound by them. Belovo S.A.'s conduct is such that it has avoided substantial contact with the forum state. Under these circumstances, due process entitles the company to the "minimum assurance" that such conduct will not render it liable to suit. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Finally, Belovo S.A.'s electronic contacts fail to satisfy the *ALS Scan* test's requirement that the electronic activity "create" the cause of action. *ALS Scan, Inc.,* 293 F.3d at 714. Plaintiffs' claims against Belovo S.A. arise from alleged trademark infringement, the retention of equipment and confidential information after the termination of the European distributorship agreement between BEE and Belovo S.A., and the relationship between Mr. Hawes and Belovo S.A. before Mr. Hawes left BEEI. None of these allegations arise from Belovo S.A.'s Web site and its minimally interactive features, including its e-mail link to Mr. Hawes. Following the rule announced in *ALS Scan,* the court concludes that Belovo S.A.'s electronic activity does not submit the company to personal jurisdiction in North Carolina for the purposes of this lawsuit.

Plaintiffs further argue that Belovo S.A. established sufficient contact with North Carolina by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers" in the state. *World–Wide Volkswagen Corp.,* 444 U.S. at 298, 100 S.Ct. at 567. Although Plaintiffs recognize that merely placing a product in the stream of commerce is insufficient to automatically confer jurisdiction, they contend that Belovo S.A.'s relationship with Mr. Hawes constitutes additional conduct warranting jurisdiction. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (including, as "additional conduct," the practice of "marketing the product through a distributor who has agreed to serve as a sales agent in the forum State"). Such additional conduct operates when a foreign defendant's products have entered the forum state in the stream of commerce. Here, however, Belovo S.A.'s lone sale in the United States was made in Illinois and shipped directly to Wisconsin. (De Meester Dec. ¶ 3.) The deal did not create a reasonable expectation that the product would enter North Carolina. This single transaction, unrelated to the claims in this case, simply does not create the "substantial connection" to the forum state necessary for the exercise of personal jurisdiction. *See Federal Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 658 (4th Cir.1989) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)).

■ Finally, considering Belovo S.A.'s tenuous contacts with North Carolina, asserting personal jurisdiction over the company would contradict " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In making this determination, a court must consider the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the efficient resolution of controversies, and the shared interests of the several states in furthering substantive social policies. *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945–46 (4th Cir.1994). These factors "apply with particular force in actions against foreign national corporations." *Ellicott Machine Corp., Inc. v. John Holland Party Ltd.,* 995 F.2d 474, 479 (4th Cir.1993).

Plaintiffs' claims against Belovo S.A. primarily involve intellectual property rights allegedly infringed in Belgium and/or Louisiana, and the termination of a contract for exclusive European distribution rights that calls for construction under Israeli law. Although North Carolina has an interest in preventing unfair business practices as alleged in the complaint, it has little interest in providing a forum for resolving claims raised by an Israeli corporation and its Massachusetts subsidiary against a Belgian corporation for acts that took place outside North Carolina. In light of its meager presence in the United States, the burden on Belovo S.A. of defending this case would be significant. BEE has an undeniable interest in obtaining relief from Belovo S.A., but its interest in securing this relief from this Defendant *in this forum* is much weaker. Similarly, it is unclear that trying Plaintiffs' contract claims, which involve Israeli law, and its

federal trademark and unfair competition claims against Belovo S.A., together with the various claims against Michael and Nicole Hawes, would lead to an efficient resolution of Plaintiffs' dispute with Belovo S.A.

The Supreme Court has cautioned that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). The countervailing interests in this case simply do not justify imposing such a burden on Belovo S.A.

Personal jurisdiction over Belovo S.A. is inappropriate because Plaintiffs' claims are insufficiently related to the company's insubstantial contacts with North Carolina. In addition, forcing Belovo S.A. to defend itself in this action would violate traditional notions of fair play and substantial justice in light of the forum's limited interest in this case and the heavy burden such a defense would impose on a foreign defendant. Having reached this conclusion, the court need not address Belovo S.A.'s arguments regarding improper venue and insufficient service of process. Lacking jurisdiction, the court must also dismiss BEE's Renewed Motion for a Preliminary Injunction. Accordingly,

IT IS ORDERED that Defendant Belovo S.A.'s Motion to Dismiss Plaintiffs' Amended Complaint [28] is granted pursuant to Federal Rule of Civil Procedure 12(b)(2).

IT IS FURTHER ORDERED that Plaintiff BEE's Renewed Motion for a Preliminary Injunction [35] is dismissed.