**ELECTRONIC BROKING SERVICES,
LIMITED**

v.

**E–BUSINESS SOLUTIONS
& SERVICES, et al.**

No. CIV. JFM–03–1350.

United States District Court,
D. Maryland.

Sept. 30, 2003.

Mark H. Kolman, Dickstein Shapiro Morin and Oshinsky LLP, Washington, DC, for Plaintiff.

Kurt W. Wolfgang, Wolfgang and Buchanan Chtd., La Plata, MD, for Defendants.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff, Electronic Broking Services, Limited., ("Electronic Broking") has brought suit against Defendants, E–Business Solutions & Services ("E–Business Solutions"), Amr Soliman, and Azmy Mohamed, claiming federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition arising from the defendants' alleged use of the trademark "Electronic Broking Services, Limited" ("EBS") in connection with the sale of electronic products and services to the banking and financial services industry. Now pending before the Court is defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). For the reasons stated below, the motion will be granted.

### I.

Since 1990, Electronic Broking Services, a British company, has provided goods and services, including computer hardware and software, to the banking and financial services industry under the name and trademark "Electronic Broking Services, Limited" ("EBS"). Electronic Broking Services owns this trademark in connection with banking services, electronic banking and interchange network services for financial institutions, data processing services exclusively for foreign exchange electronic brokering and market trading, and foreign exchange brokerage services. (Plaintiff's Ex. A–D, Compl. ¶ 10).

Defendant Amr Soliman, is the director of business development for defendant E–Business Solutions. E–Business Solutions is an Egyptian company based in Cairo

and owns the trademark "eBS" in Egypt. Defendant Azmy Mohamed, CTO of E–Business Solutions, is the record owner of the internet domain Electronic Broking Services, Limitedeq.com, the official website of E–Business Solutions. Through this website and using the name "eBS", the defendants offer a number of products and services for banking and financial entities, including products that deliver electronic banking services and Internet-based solutions that provide brokerage services for stock brokers and foreign exchange brokers. (Plaintiff's Ex. E, Compl. ¶ 12).

E–Business Solutions conducts business internationally and has established business relationships with numerous multinational companies. (Plaintiff's Ex. 6, Walker Decl.). Upon belief that the defendants' use of the "EBS" name in the marketing and sale of services for the financial industry was a clear infringement of Electronic Broking's trademark for the provision of related services, Electronic Broking engaged a private investigator, Shane Walker, to probe the extent of E–Business Solutions' business activities in the United States. Under the guise of a Florida-based brokerage firm interested in engaging the services of E–Business Solutions, he used the email address posted on E–Business Solutions' website to contact the defendants. Through his email correspondence with Amr Soliman, Walker discovered that E–Business Solutions had one customer in California and was informed that "one established partner in the USA is Emerging Markets, Inc.," a corporation based in Randallstown, Maryland. (Plaintiff's Ex. 6, Walker Decl.). Soliman also emailed Walker a company profile produced by Emerging Markets, which lists E–Business Solutions as a "partner."

Other than this business relationship, Electronic Broking alleges no other contacts between E–Business Solutions and the state of Maryland. Defendants have no other connection to the United States except through their website. None of the defendants has ever been to Maryland, nor have any of their employees ever visited Maryland for the purpose of conducting business.[1]

On November 26, 2002, Electronic Broking sent a written demand to E–Business Solutions requesting that it cease and desist all use of the "EBS" trademarks by February 1, 2003. When E–Business Solutions failed to abandon its use of the trademark, Electronic Broking brought suit against E–Business Solutions, Soliman, and Mohamed for trademark infringement under the Lanham Act and unfair competition under Maryland state law.

## II.

### A.

 E–Business Solutions, Soliman, and Mohamed move to dismiss the complaint for lack of personal jurisdiction. In order to withstand the motion, Electronic Broking must make at least a prima facie case of personal jurisdiction, which requires proof of jurisdiction by a preponderance of the evidence. In determining whether the exercise of personal jurisdiction would be proper, the court must resolve all factual disputes and construe all reasonable inferences in favor of the plaintiff.

 A federal court may exercise personal jurisdiction over a non-resident defendant if (1) jurisdiction is authorized

1. Defendants emphasize that although Emerging Markets is based in Maryland, it does business in Africa, and the relationship defendants established with Emerging Mar-

kets was accordingly for the purpose of business to be conducted in Kenya. (Def.'s Reply to Oppos. to Mot. to Dismiss, ¶ 1; Soliman Aff. at ¶ 5; Mohamed Aff. at ¶ 5).

under the state's long-arm statute and (2) the assertion of jurisdiction comports with constitutional due process. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). The Maryland courts have consistently held that the state's long-arm statute is coterminous with the extent of jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment. *Androutsos v. Fairfax Hosp.*, 323 Md. 634, 594 A.2d 574 (1991). Therefore, the statutory inquiry and the constitutional inquiry merge into one. *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir.1996).

 Due process requires that personal jurisdiction over a non-resident defendant only be exercised where the defendant has certain minimum contacts with Maryland "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

 The nature of the suit and the defendant's contacts with the forum state determine whether a court may assert specific or general jurisdiction. A court may exercise specific jurisdiction where the claim is related to or arises out of the defendant's contacts with the state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) Alternatively, a defendant may be subject to general jurisdiction in a suit entirely unrelated to the defendant's contacts with the forum state where the defendant maintains "continuous and

systematic" contact with the state. *Id.* at 414–415, 104 S.Ct. 1868 (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). The threshold level of contacts necessary for general jurisdiction is substantially higher than that required for specific jurisdiction. The Fourth Circuit has warned against broad constructions of general jurisdiction, *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir.1993), and courts typically assert general jurisdiction only over non-residents "who are essentially domiciled within the forum state." *Corry v. CFM Majestic, Inc.*, 16 F.Supp.2d 660, 663 (E.D.Va.1998).

Electronic Broking does not allege that E–Business Solutions has had "continuous and systematic" contact with Maryland. It argues for personal jurisdiction based solely on E–Business Solutions' "semi-interactive" website and the defendants' activities involving one Maryland corporation. (Def.'s Oppos. to Mot. to Dismiss). Jurisdiction must therefore derive, if at all, from the specific activities of E–Business Solutions in Maryland.[2]

### B.

 Specific jurisdiction requires the court to determine "(1) the extent to which the defendant 'purposely availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable'." *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707, 712

**2.** Although E–Business Solutions' website does allow for some interaction between users and the company via email, Electronic Broking has not alleged sufficient contact between the defendants and Maryland residents to give rise to general jurisdiction. Electronic Broking avers only one business alliance between the defendants and a Maryland corporation. Such business activity falls far short of the

"continuous and systematic" contacts necessary to sustain the assertion of general jurisdiction. *See Robbins v. Yutopian Enterprises*, 202 F.Supp.2d 426 (D.Md.2002) (holding that general jurisdiction did not exist where defendant conducted forty-six transactions in ten and a half months with Maryland residents, some of which were completed through its active Internet website).

(4th Cir.2002). Extending these criteria to the ubiquitous nature of Internet communication, the Fourth Circuit in *ALS Scan* addressed the question of when a non-resident has conceptually "entered" the forum state by way of the Internet for jurisdictional purposes. *Id.* at 713. The Court adopted the "sliding scale" standard for Internet-based specific jurisdiction over non-resident defendants articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). *Id. Zippo* distinguished among interactive, semi-interactive, and passive websites and the implications of each type for the assertion of personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F.Supp. at 1124.

*ALS Scan* further elaborated the jurisdictional test in a three-prong approach that justifies jurisdiction where the non-resident defendant "(1) directs electronic activity into the State, (2) with the mani-fested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." 293 F.2d at 714.

■ Because E–Business Solutions' website contains an email address to facilitate the exchange of information between visitors and the host computer, it falls within the middle of the *Zippo* spectrum and is most appropriately characterized as "semi- or minimally interactive." *See B.E.E. International, Ltd. v. Hawes*, 267 F.Supp.2d 477, 484 (M.D.N.C.2003); *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 218 n. 11 (4th Cir.2001) (finding "minimally interactive" a site that offered e-mail correspondence for visitors' questions and information requests). The necessary inquiry then must focus on the website's level of interactivity and the commercial nature of the exchange of information.

In *Carefirst of Maryland, Inc., v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir.2003), a trademark infringement case involving a semi-interactive website through which users could make online donations to the defendant corporation, the Fourth Circuit held that personal jurisdiction was unwarranted because, although the website was accessible by Maryland residents, the defendant did not activate it with the manifest intent of interacting specifically with Maryland residents. The Court found it particularly relevant that the only evidence of online communication between the defendant and the forum was a single donation by a Maryland resident. *Id.* at 401. *See B.E.E. International*, 267 F.Supp.2d at 484–85 (rejecting the assertion of personal jurisdiction over a "minimally interactive" website and holding that while the availability of email contact went beyond the mere passive posting of information, it did not

indicate that the defendant intentionally targeted potential customers in the forum state more than potential customers elsewhere in the United States).

Similarly, Electronic Broking has proffered evidence of business contact between the defendants and just one Maryland entity. There is no indication that E–Business Solutions intentionally targeted residents in Maryland through its website or directed its electronic activity into Maryland with the manifested intent of conducting business within the state. While Soliman communicated to Walker that E–Business Solutions' alliances in the Americas were established through its Internet presence (Walker Decl., Ex. 5), even if one could infer that its relationship with Emerging Markets was facilitated by communication through the website, that alone would not reveal an intentional use of the website to target Maryland customers.

## C.

Electronic Broking argues that E–Business Solutions' website activity aside, the defendants are subject to personal jurisdiction pursuant to Maryland's long-arm statute, Md.Code, Courts, and Judicial Proceedings, § 6–103(b)(1), because E–Business Solutions has transacted business with a Maryland corporation and Electronic Broking's claims arise at least partly out of these contacts. Plaintiff, however, makes no allegations to support a contention that E–Business Solutions' contacts with Maryland have created a "substantial connection" with the state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Such allegations, reflecting that a defendant " 'deliberately' has engaged in *significant* activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum," are necessary to support any claim for specific jurisdiction. *Id.* at 475–76, 105 S.Ct. at 2184.

Defendants' admit engaging in business with Emerging Markets, a Maryland corporation that does business in Africa. However, defendants maintain that they pursued the alliance for the purpose of business to be conducted in Kenya, not Maryland (Def.'s Reply to Oppos. to Mot. to Dismiss, ¶ 1). Mohamed and Soliman further assert that ultimately no business was ever consumated with Emerging Markets, as no services were rendered. (Soliman Aff. at ¶ 5; Mohamed Aff. at ¶ 5).[3] At no time did Soliman, Mohamed, or any E–Business employee enter the state in relation to these business negotiations. Thus, other than the fact that Emerging Markets is based in Maryland, E–Business Solutions' transactions with the corporation had no connection to the state.[4]

3. Defendants Mohamed and Soliman made these characterizations of their business relationship with Emerging Markets in affidavits filed with this court five days after plaintiff had already filed its Opposition to Defendants' Motion to Dismiss. Electronic Broking, therefore, has had no opportunity to respond to defendants' claim that their business with Emerging Markets related only to Kenya and that no transaction was ever completed between E–Business Solutions and Emerging Markets. These assertions, if true, persuasively support a finding of no personal jurisdiction due to defendants' lack of substantial contacts with Maryland. Even if these assertions were not true, however, personal jurisdiction would nevertheless be improper absent further allegations by plaintiff showing that defendants' contacts with Emerging Markets were significant in nature and scope. Electronic Broking has offered no specific proof of such contacts.

4. The fact that the defendants may have permitted Emerging Markets to refer to E–Business Solutions in the company's profile does not change the jurisdictional analysis. *See Hanson v. Denckla,* 357 U.S. 235, 252, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact

That said, a single contact with a state may be sufficient to establish specific jurisdiction if the cause of action arises out of that contact. However, single or occasional contacts with the forum are insufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" create only an "attenuated" affiliation with the forum. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184.

Moreover, assertion of jurisdiction on the basis of a single contact is valid only if principles of fair play and substantial justice are not offended. *Carefirst*, 334 F.3d at 397. In determining whether jurisdiction is consistent with these principles, a court may consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief, the efficient resolution of disputes, and the shared interest of the states collectively in furthering substantive social policies. *B.E.E. International*, 267 F.Supp.2d at 486 (citing *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945–46 (4th Cir.1994)). *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). These considerations "apply with particular force in actions against foreign national corporations." *Ellicott Machine Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 479 (4th Cir.1993).

Here, the burden that the defendants would bear in litigating in Maryland is great. Soliman and Mohamed are Egyptian citizens and E–Business Solutions is based in Egypt. None of them maintains a physical presence in the United States, nor have they conducted extensive business in the country. In *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987), the Supreme Court advised that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." The fact that all of the defendants are located in Egypt and maintain a presence in the United States only through their website counsels against the assertion of personal jurisdiction.

Furthermore, because Electronic Broking is a British company, Maryland's interests in resolving the dispute are weak. Although Maryland does have an interest in preventing trademark infringement and unfair competition, as alleged by the plaintiff, it has little interest in providing a forum for the adjudication of claims brought by a British company against Egyptian defendants. Nor does Electronic Broking have a strong interest in having its claims resolved in Maryland. As a British company doing business internationally, its interest in obtaining relief in Maryland seems unsubstantial. Moreover, it is unclear that adjudicating the dispute in Maryland would result in the most efficient resolution of the controversy since E–Business Solutions owns the "EBS" trademark in Egypt and may continue to use it in that forum and perhaps others despite some resolution of the dispute in Maryland.

### III.

In sum, Defendants' contacts with Maryland do not rise to the level of "minimum contacts" necessary to constitutionally subject them to either general or specific personal jurisdiction in this court. There is no evidence that they directed E–Business

with the forum State."). Emerging Markets' choice to include E–Business Solutions in its profile is irrelevant to the ultimate requirement that the defendants themselves have committed some act by which they purposefully availed themselves of the privilege of conducting business in the forum state. *Id.* at 1240.

Solutions' semi-interactive website into Maryland with the explicit intent of targeting Maryland residents, nor do their Internet activities amount to the type of "continuous and systematic" contacts required for general jurisdiction. Although the defendants have engaged in business with one Maryland corporation, which they contend was related to matters in Africa, Electronic Broking has failed to allege facts regarding the nature and extent of such business dealings sufficient to show a "substantial connection" between the defendants and Maryland. Furthermore, asserting jurisdiction over the defendants in this forum would violate traditional notions of fair play and substantial justice given the considerable burden on the defendants and the limited interests of the plaintiff and the forum in adjudicating the dispute in Maryland. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction will be granted.

A separate order is being entered herewith.