**YOUNG AGAIN PRODUCTS, INC., Plaintiff**

v.

**John ACORD, et al., Defendants**

**No. RWT 03–CV–2441.**

United States District Court, D. Maryland.

March 11, 2004.

Mark A. Freeman, Martin Leo Vedder, Thomas R. Freeman, Freeman and Freeman PC, Rockville, MD, for Plaintiff.

Lawrence E. Laubscher, Jr., Law Office of Lawrence E. Laubscher Jr., Annapolis, MD, for Defendants.

---

## MEMORANDUM OPINION

TITUS, District Judge.

Plaintiff, Young Again Products, Inc., brought suit against Defendants, John Acord ("Acord") and Young Again Nutrients,[1] claiming trademark infringement in violation of the Lanham Act § 32, 15 U.S.C. § 1114 (count I), federal and common law unfair competition (counts II and III), copyright infringement in violation of the Copyright Act of 1976 (count V), breach of contract (count VI) and declaratory judgment (count VII) stemming from Defendants' allegedly unauthorized use of various products that Young Again Products has trademarked and/or copyrighted.[2]

Now pending before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3). Defendants argue, relying on *ALS Scan v. Digital Service Consultants, Inc.,* 293 F.3d 707 (4th Cir.2002), that their contacts with the State of Maryland are not sufficient to establish jurisdiction because they "do not engage in repeated transmission of computer files with consumers in Maryland, ... [or] specifically direct any promotion or advertising materials to Maryland consumers." Mot. to Dismiss at 3. Alternatively, Defendants request that the case be transferred to the United States District Court for the Southern Division of Texas. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the motion will be denied.

## BACKGROUND

In 1998, Young Again Products, a Maryland corporation, entered into an agreement ("the Agreement") with Acord,[3] pur-

---

1. According to Defendant, its correct name is Young Again Nutrition, LLC. For purposes of consistency, the Court will refer to it as Young Again Nutrition.

2. Counts six through seven are incorrectly numbered in the Complaint.

3. As alleged by Plaintiff, at the time that the Agreement was executed, Acord was doing business as Young Again Nutrition. Compl. ¶ 14. Plaintiff asserts, "upon information and belief," that Acord incorporated Young Again Nutrition in a foreign country in or around 2000. *Id.* ¶ 14 n. 1. Defendants assert that Young Again Nutrition was formed in Texas

suant to which Acord contracted to buy and resell various products trademarked by Young Again Products, and identified as Arthritis Arsenal®, Better Prostate™, Fat Absorb®, Arthritis Free™, Better Cholesterol®, Better Immunity™, German Zyme™, Miracle Cream™, The Estrogen Alternative™, The Osteoporosis Answer®, Total Minerals™, Total Vitamins™, Skin Cure®, and Vein Free® (herein "the Products"). Acord is the manager of Young Again Nutrition. Decl. of John Acord ¶ 1. Young Again Nutrition engages in Internet retail sales of health related products. *Id.* ¶ 7. Under the Agreement, *which was entered into in Maryland,* Acord, then doing business as Young Again Nutrition, was to utilize his marketing and distribution resources to resell the Products. Compl. ¶ 14. The Products were shipped by Plaintiff to Defendant. *Id.* ¶ 15. The Agreement also permitted the Internet posting of Young Again Products' copyrighted and federally registered e-book, *The Natural Prostate Cure®. Id.* ¶ 20. Defendants have not made the required payments under the Agreement since July of 2003. *Id.* ¶ 16. Defendants continue to engage in the sale and distribution of the Products and continue to post Plaintiff's copyrighted e-book on their web site. *Id.* ¶¶ 19 and 23.

## STANDARD OF REVIEW

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir.2003) (citations omitted). When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* at 396 (citing *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989)). In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993).

## DISCUSSION

A federal court may exercise personal jurisdiction over a non-resident defendant if (1) jurisdiction is authorized under the state's long-arm statute, Md.Code Ann., Cts. & Jud. Proc. § 6–103, and (2) the assertion of jurisdiction comports with constitutional due process. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir.2001).

The Maryland courts have consistently held that the state's long-arm statute is coterminous with the extent of jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment. *Electronic Broking Servs., Ltd. v. E–Business Solutions & Servs.,* 285 F.Supp.2d 686, 689 (D.Md.2003) (citations omitted). Therefore, the statutory inquiry and the constitutional inquiry merge into one. *Id.* Due process requires that personal jurisdiction over a non-resident defendant only be exercised where the defendant has certain minimum contacts with Maryland "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The nature of the suit and the defendant's contacts with the forum state determine whether a court may assert general or, as

in 2002, as a limited liability company. Mot.

to Dismiss at 1.

Plaintiff asserts here, specific jurisdiction. *Id.* A court may exercise specific jurisdiction where the claim is related to or arises out of the defendant's contacts with the state. *Id.* (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 411, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction requires the court to determine "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan,* 293 F.3d at 711–12.

 Though the statutory inquiry merges with the constitutional inquiry, Maryland's authoritative interpretation of the long-arm statute, *see Carefirst,* 334 F.3d at 396, is particularly appropriate to the question of jurisdiction in this case. While the parties neither cite to nor rely on any specific provision of the long-arm statute, at least one of the five provisions of the statute, which confer specific jurisdiction, is applicable here, i.e., § 6–103(b)(1).[4] Only one provision of the statute need be satisfied in order to assert jurisdiction. *Bahn v. Chicago Motor Club Ins.,* 98 Md. App. 559, 568, 634 A.2d 63 (1993).

The first provision, § 6–103(b)(1), "requires 'actions that culminate in purposeful activity within the State.'" *Id.* (citations omitted). As Maryland's appellate courts have interpreted part (b)(1), "the defendant need never have been physically present in the state." *Id.* (citing *Sleph v. Radtke,* 76 Md.App. 418, 427, 545 A.2d 111, *cert. denied,* 314 Md. 193, 550 A.2d 381 (1988)). In *Chicago Motor Club,* for example, the Court of Special Appeals observed that personal jurisdiction was not precluded by the fact that the defendant in that case was incorporated in a foreign state and was licensed to do business only in that state. *Id.* at 568, 634 A.2d 63. What was relevant to a determination of whether the defendant transacted business in Maryland, within the meaning of § 6–103(b)(1), the court held, was that the defendant "sent notices to [the plaintiffs] in Maryland, contracted with [the plaintiffs] in Maryland, and received payments sent by [the plaintiffs] from Maryland." *Id.* at 570, 634 A.2d 63; *see, e.g., Jason Pharm. v. Jianas Bros. Packaging, Co.,* 94 Md.

---

4. Maryland's long-arm statute reads:

(a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

(c) (1)(i) In this subsection the following terms have the meanings indicated.

(ii) "Computer information" has the meaning stated in § 22–102 of the Commercial Law Article.

(iii) "Computer program" has the meaning stated in § 22–102 of the Commercial Law Article.

(2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.

Md.Code Ann., Cts. & Jud. Proc. § 6–103.

App. 425, 432, 617 A.2d 1125 (foreign corporation's "one-transaction contract with a Maryland corporation constitutes transaction of business within the meaning of § 6–103(b)(1)"). As the Court must accept for purposes of this motion, Defendants' use of the Products at issue in this action was authorized in a contract that was negotiated and entered into in Maryland. · Compl. ¶¶ 14, 66–82. Accordingly, jurisdiction is authorized under Maryland's long-arm statute because Defendants transacted business in Maryland within the meaning of § 6–103(b)(1).

■ The Court's exercise of jurisdiction also comports with due process. In the context of a nonresident who has entered the forum state by way of the Internet for jurisdictional purposes, the Fourth Circuit articulated in *ALS Scan* a three-prong approach that justifies jurisdiction where the non-resident defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. Distinguishing among interactive, semi-interactive, and passive web sites, the court explained:

> Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

*Id.* More recently, the Fourth Circuit observed that "when a web[ ]site is neither merely passive nor highly interactive, the exercise of jurisdiction is determined 'by examining the level of interactivity and commercial nature of the exchange of information that occurs.' " *Carefirst*, 334 F.3d at 400 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997)).

Applying the above principles, the exercise of personal jurisdiction over Defendants in this forum easily comports with Fourteenth Amendment due process standards. While, as Defendants contend, Maryland may not be "a focal point of [their] Internet business," Defs.' Reply at 1, Defendants do not dispute the commercial nature of their Internet activity in Maryland. *See* Decl. of John Acord ¶ 7. As Acord asserts in his declaration, "as a result of [Young Again Nutrition's Internet retail services] it has made sales to consumers in 50 states . . . . [of which] .02% . . . were conducted with and/or shipped to Maryland consumers." *Id.* ¶¶ 10 and 12. Despite the allegedly "exceedingly low number of Internet sales by Young Again Nutri[tion] to consumers in Maryland," Defs.' Mot. to Dismiss at 3, Defendants do not and cannot dispute that they engage in business in Maryland. And, Defendants' Internet activity is directly related to the claims brought against it in this action. Young Again Nutrition's Internet activity, as alleged, involves the publication of the infringing trademarked and copyrighted products that were the subject of the agreement the parties entered into in Maryland. Compl. ¶¶ 19 and 23.

Moreover, assertion of jurisdiction does not offend principles of fair play and substantial justice. Maryland has an interest in providing a forum for the adjudication of claims of breach of contract, trademark infringement and unfair competition as alleged by a Maryland corporation, which purportedly stem from a contract formed

in Maryland as well as Internet activity directed into Maryland.

The Court is unpersuaded by Defendants' attempt to align this case with cases from this jurisdiction involving defendants whose activity in Maryland has been Internet-related, and where dismissal has been granted for lack of personal jurisdiction. *See* Defs.' Reply at 3. Those cases are readily distinguishable. For example, *Electronic Broking* involved claims of trademark infringement and unfair competition brought by a British company against an Egyptian defendant. In that case, the only alleged contact with Maryland consisted of an unconsummated transaction with a Maryland corporation that engaged in business in Africa only. *Electronic Broking Servs.*, 285 F.Supp.2d at 691. In contrast to the present case, the Internet activity in *Carefirst* was not commercial in nature. The defendant in that case was a non-profit organization that offered assistance to Chicago-area women in pregnancy crisis. *Carefirst*, 334 F.3d at 401. In that case, the only evidence of online communication between the defendant and Maryland residents involved a single donation, which the court observed was "initiated by Carefirst's counsel (ostensibly made to bolster the position of her client in this litigation)." *Id.*

Defendants' claim of improper venue is equally unpersuasive. Venue is governed by 28 U.S.C. § 1391. This statute permits jurisdiction in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). As the Court must accept for purposes of this motion, the contract between the parties, which underlies the breach of contract claim, was entered into in Maryland, and Internet traffic was directed into Maryland and resulted in sales. Therefore, venue is proper in Maryland.

■ Lastly, A weighing of the factors identified by Defendants as relevant to a court's determination on whether to transfer venue, i.e., plaintiff's choice of venue, the convenience of the parties and witnesses, the interests of having local controversies decided at home, the ease of access to sources of proof, and the interests of justice, does not favor the transfer of this case to Texas. *See* Defs.' Reply at 6. As a Maryland corporation, Young Again Products' choice of forum is given great deference. *See Piper Aircraft Co., v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981) (a plaintiff's choice of forum is accorded strong deference, unless the plaintiff is a non-resident of the forum). Further, where the contract underlying the breach of contract claim was negotiated and entered into in Maryland, Maryland law will likely govern. *See* Compl. ¶¶ 14, 66–82. Defendants' unsupported contention that its primary witnesses are physically located outside of the State is insufficient to convince the Court that venue should be changed. *See Brown v. Stallworth*, 235 F.Supp.2d 453, 457 (D.Md.2002) (finding that counsel's assertions of hardship, without affidavits from the parties and/or witnesses purportedly inconvenienced, was an insufficient showing).

## CONCLUSION

For the reasons noted above, Defendant's motion to dismiss for lack of personal jurisdiction and improper venue will be DENIED. A separate order will be entered.

## *ORDER*

Having considered Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P.12(b) [Paper No. 9], Plaintiff's Opposition there-

to, Defendants' Reply, and for the reasons stated in the Memorandum Opinion filed in conjunction with this Order, it is this 11th day of March, 2004, by the United States District Court for the District of Maryland,

**ORDERED**, that Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P.12(b) [Paper No. 9] is, and shall be, **DENIED**; it is

**FURTHER ORDERED**, that Plaintiff's Motion for an Expedited Decision from the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction and Improper Venue [Paper No. 17] is **DENIED** as **MOOT**; it is

**FURTHER ORDERED**, that Defendants' Motion to Stay Defendants' Opposition to and Consideration of Plaintiff's Motion for Preliminary Injunction [Paper No. 19] is **DENIED**; and it is

**FURTHER ORDERED**, that a hearing on Plaintiff's Motion for Preliminary Injunction [Paper No. 18] is scheduled for **March 22, 2004, at 10:00 a.m.**