**HOME PORT RENTALS, INCORPORATED, Plaintiff–Appellee,**

v.

**Peter RUBEN, Defendant–Appellant,**

and

**The International Yachting Group, Incorporated, a Florida corporation, Denny Allen, Roger Moore, Jim Edwards, Defendants.**

**HOME PORT RENTALS, INCORPORATED, Plaintiff–Appellee,**

v.

**Denny ALLEN, Defendant–Appellant,**

and

**The International Yachting Group, Incorporated, a Florida corporation, Peter Ruben, Roger Moore, Jim Edwards, Defendants.**

Nos. 91–2096, 91–2107.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1991.

Decided Feb. 25, 1992.

T. English McCutchen III, Whaley, McCutchen, Blanton & Rhodes (Ronald James Tryon, on brief), Columbia, S.C., for defendant-appellant Ruben.

Andrew K. Epting, Wise & Cole (D.K. Tennyson, on brief), Charleston, S.C., for defendant-appellant Allen.

Daryl James Corbin, Law Offices of Daryl J. Corbin, W. Carole Holloway, Florence, S.C., for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and LUTTIG, Circuit Judges.

## OPINION

LUTTIG, Circuit Judge:

The United States District Court for the District of South Carolina granted default judgment against International Yachting Group, Inc., Peter Ruben, Denny Allen, and two other individuals, and thereafter denied motions filed by Ruben and Allen to vacate the judgment. Ruben and Allen appeal the district court's judgment. We affirm.

### I.

Defendant International Yachting Group, Inc. (IYG), entered three boat franchise lease agreements with plaintiff-appellee Home Port Rentals, Inc. ("Home Port") in 1985. See J.A. at 240, 272, 289. IYG subsequently sold its assets to Adventurent, Inc., and both IYG and Adventurent moved operations from IYG's original Dania, Florida, address to Fort Lauderdale, Florida.

See id. at 281. IYG had ceased all operations by December 1986. See id.

On August 13, 1986, Home Port filed suit against IYG, Peter Ruben, Denny Allen, Roger Moore, and Jim Edwards in the United States District Court for the District of South Carolina. See id. at 205, 290. Ruben was IYG's chairman of the board, see id. at 281, and Allen its president, see id. at 289. Moore and Edwards were employees of the corporation. See id. at 407. F. Mikell Harper represented IYG and the individual defendants in the action. See id. at 291.

In late 1987, Home Port and the defendants agreed to dismiss the suit without prejudice. On November 3, 1987, Harper wrote to Allen at IYG's Fort Lauderdale address to inform him of the dismissal. See id. at 252. The next day, the district court signed the consent agreement granting Home Port a voluntary nonsuit without prejudice. Id. at 33–34. The agreement provided that the defendants would submit to the court's jurisdiction and that they would appoint Harper to accept service of process in a refiled suit so long as "such proceedings [were] commenced by the plaintiff no later than 180 days from the date of this Order." Id. The clerk of court filed the order on November 13 and entered it on November 17. See id.

Adventurent's receptionist, a former IYG employee, forwarded Harper's November 3, 1987, letter from Fort Lauderdale to Allen at Allen's new address in Keller, Texas. See id. at 290. Allen in turn told Ruben of the dismissal and of the contents of Harper's letter. See id. at 82, 291.

On May 4, 1988, Home Port refiled its suit against the defendants. See id. at 6–14. On May 25, 1988, Harper sent a certified letter to Allen at IYG's former Fort Lauderdale address, enclosing a copy of both Home Port's and the defendants' pleadings, a motion to dismiss, a supporting memorandum, and a request for Allen's new address and telephone number. See id. at 275. And on May 26, 1988, Harper filed responsive pleadings with the district court on behalf of the defendants. See id. at 25–32.

Harper's May 25 letter to Allen was returned unopened. *See id.* at 388. Harper attempted unsuccessfully to persuade Adventurent's attorney to assist in locating the individual defendants. *See id.* at 255–56. Harper then filed a motion to withdraw as counsel for the defendants. *See id.* at 40–44. His motion stated that the defendants were fully aware of the consent order and the new proceeding; that he had made a diligent but futile search for the defendants; and that the defendants were unable or unwilling to cooperate. *See id.* at 43. At about this time, Ruben moved from Florida to Mill Valley, California. *See id.* at 84, 283. The record does not reflect that Allen or Ruben ever disclosed Ruben's new address to Harper. *See id.* at 416.

On August 25, 1988, the district court proposed to issue a rule to show cause why the defendants should not be held in default, *see id.* at 51, and on September 23, 1988, it issued a show cause rule, *see id.* at 279–80. The court served the rule on the defendants by registered mail at their last known addresses. *See id.* at 423, 425, 428, 430, 432. The registered letters to Allen, Ruben, and IYG were returned unaccepted. *See id.* at 425, 430, 432.

Neither Harper nor any of the defendants appeared at the October 25, 1988, show cause hearing. *See id.* at 57. Thereupon, the court granted Harper's motion to withdraw as defendants' counsel. *See id.* at 61. And on October 31, 1988, the court held the defendants in default for failing to cooperate in discovery, refusing to submit to depositions, and failing to participate in the defense of the suit. *See id.* at 62–64. After a default judgment hearing, the court on March 16, 1989, awarded Home Port $1.2 million in actual damages and $50,000 in punitive damages. *See id.* at 73–76.

On March 23, 1989, the court sent a copy of the default judgment order to Ruben at the same address to which the court had sent prior notices. *See id.* at 77. The husband of a former IYG employee received the letter at that address and forwarded it to Ruben's California address.

*See id.* at 83. Ruben received the letter on April 1, 1989, and two days later telephoned a San Francisco attorney, who helped arrange representation for Ruben by a South Carolina attorney. *See id.* at 304, 317. The South Carolina attorney did not file a motion to vacate the judgment until March 14, 1990, nearly a year later. *See id.* at 79–80.

On July 17, 1990, the district court denied Ruben's motion to vacate the judgment on the grounds that Ruben failed to act promptly after receiving notice of default, *see id.* at 163, and that vacating the default judgment would unfairly require Home Port to rely on stale evidence, *see id.* at 164. The court held that the defendants' waiver of defenses in the consent order dismissing Home Port's original suit conferred upon the court personal jurisdiction over Ruben. *See id.* at 165–66.

Ruben filed a motion to reconsider the court's refusal to vacate the judgment on August 15, 1990, *id.* at 171–77, and Allen filed a similar motion on November 27, 1990, twenty months after the judgment, *id.* at 325–26. In its April 25, 1991, order denying both motions, the court restated its suspicions that Ruben and Allen had attempted to evade Harper after the consent order was entered. *See id.* at 416–17. After reconsidering whether Ruben had acted promptly in seeking relief from default, the court concluded that Ruben could not be faulted for the delay in his motion. *See id.* at 417. Nevertheless, the court refused to grant the requested relief from judgment, holding that Ruben and Allen, "by making themselves unavailable, have created these default judgments." *Id.* at 418.

Ruben and Allen appealed the district court's entry of default judgment and order denying relief from judgment.

## II.

Ruben and Allen raise four challenges to the district court's refusal to relieve them from default judgment. First, both appellants argue that the district court erred in refusing to vacate the default judgment as void for lack of personal jurisdiction and

ineffective service of process. *See* Fed. R.Civ.P. 60(b)(4). Second, Ruben argues that the district court abused its discretion in refusing to vacate the judgment against him on the grounds of "excusable neglect." *See* Fed.R.Civ.P. 60(b)(1). Third, Allen argues that the district court abused its discretion in refusing to vacate the judgment against him for "any other reason justifying relief." *See* Fed.R.Civ.P. 60(b)(6). Finally, both appellants argue that the district court's decision to impose default judgment in itself constituted an abuse of discretion. None of these arguments is persuasive.

### A.

Ruben and Allen argue that the district court's default judgment should be vacated because the court lacked personal jurisdiction over them and because service of their copies of the court's orders and the parties' pleadings through Harper was unauthorized. The district court rejected these arguments on the grounds that the defendants had waived their personal jurisdiction and service of process defenses by the terms of the consent agreement they entered into with Home Port.

The parties' agreement, upon which the court's consent order was based, reads as follows:

(1) The Plaintiff shall be granted a voluntary non-suit without prejudice;

(2) The Court shall exert jurisdiction over the above-named parties arising from any action instituted by the Plaintiff, *provided that*, such proceedings are instituted no later than 180 days from the date of this Order;

. . . . .

(4) F. Mikell Harper, Esquire, attorney for the above-named defendants, shall accept on behalf of such Defendants service of process arising from legal proceedings instituted by the Plaintiff, *provided that*, such proceedings are commenced by the Plaintiff no later than 180 days from the date of this Order.

J.A. at 33–34. Thus, under the terms of the consent order, Home Port's original action was dismissed upon appellants' agreement to waive any objections to the court's assertion of personal jurisdiction and to authorize Harper to receive service of process on their behalf. The appellants advance two arguments to avoid what they must concede would otherwise be the dispositive adverse consequences of the agreement's terms on their personal jurisdiction and service of process claims.

■ First, they contend that neither Allen nor Ruben authorized Harper to enter into the consent agreement or to accept process on behalf of the defendants with respect to the reinstituted suit. *See* Appellants' Br. at 23. While the record does not reflect that Harper was expressly authorized to enter into the agreement or to accept service on the defendants' behalf, there is sufficient evidence to show that Harper, at the very least, was impliedly authorized to undertake both commitments on the defendants' behalf.

Harper served as counsel for the defendants throughout the original litigation. He negotiated and entered into the consent agreement on behalf of the defendants with the full knowledge of defendant Allen, who served as IYG's president and who acted on behalf of the corporation and the individual defendants throughout the action. *See* J.A. at 290. The record shows that the day before the court ordered the dismissal, Harper informed Allen by letter that the parties had reached agreement on the consent terms and that the case "ha[d] been" dismissed. *Id.* at 252. At the same time, Harper told Allen that Home Port could, under the terms of the consent agreement, reinstitute the suit. *See id.* Finally, Harper observed that "so far, things seem to be going well" and assured Allen that he would "keep [him] posted on developments in this matter," although he *did not expect further action to be neces-sary. Id.* Allen in turn informed Ruben of the dismissal and of "the contents of [Harper's] letter," which included reference to Home Port's right to reinstitute suit. *Id.* at 291; *see also id.* at 82. There is also other evidence in the record that Ruben knew that the suit could be reinstituted. *See id.* at 389.

The record thus reflects that both Allen and Ruben knew of the consent agreement and order dismissing the original action, and that Allen—and probably Ruben—knew of the possibility that Home Port could reinstitute the suit within a reasonably short period of time. It also shows that Allen, if not also Ruben, at least acquiesced in, if not agreed to, having Harper serve as the defendants' liaison with both the court and Home Port on any developments in the matter subsequent to the dismissal. Allen was informed by Harper that he intended to apprise him if the suit were reinstituted and to "keep [him] posted on developments in the matter," and Allen apparently accepted Harper's commitment without protest. Ruben also presumably knew that Harper intended to continue to monitor the matter and to keep the defendants posted on further developments. Allen's affidavit recites that he informed Ruben of the contents of Harper's letter, which included the statement that Harper intended to keep Allen posted on future developments in the case.

Aware that the action had been dismissed by court order entered upon an agreement negotiated and signed by Harper but that the action might be reinstituted, neither Allen nor Ruben initially requested to review a copy of the consent agreement or order or subsequently inquired when a copy was not forthcoming. Neither objected to the dismissal or to Harper's service in obtaining the dismissal. And neither objected to Harper's stated intention to apprise them of further developments in the matter. Particularly when viewed against the backdrop of Harper's representation of the defendants throughout the original action, this is ample support for the district court's finding that Harper was authorized to act on behalf of the defendants in entering into the consent agreement and in accepting service on the defendants' behalf.

 Appellants contend in the alternative that any waiver of defenses included within their consent agreement never took effect because Home Port failed to comply with the consent order's condition that reinstitution of suit occur "no later than 180 days from the date of this Order." *Id.* at 34. Whether Home Port filed within the time period required by the consent order turns on whether the court meant by the phrase "the date of this Order" to refer to November 4, 1987, the date on which the court signed the consent order, *see id.* at 34, or to November 13, 1987, the date on which the order became effective, *id.* at 166; *see* Fed.R.Civ.P. 58 ("[A] judgment is effective only when ... entered as provided in Rule 79(a)."). The district court found that "the relevant date for computation of time is the date the order was filed in the Clerk of Court's Office, November 13, 1987." J.A. at 166. Because Home Port refiled its action on May 4, 1988, *see id.* at 6–14, 172 days after the consent order was filed with the Clerk of Court, the court concluded that the refiled action was timely.

Appellants urge us to hold that the phrase "the date of this Order" is the date the court signed the consent order. If the phrase were interpreted in this manner, the 180th day from the date of the order would have been May 2, 1988, two days before Home Port refiled its suit, and therefore the suit would have been barred by the terms of the order. It is not clear from the face of the consent order which date the court considered to be the date of the order. It is peculiarly within the province of the district court, however, to determine the meaning of its own order. *See, e.g., Kendrick v. Peters,* 931 F.2d 421, 423 (6th Cir.1991); *Vaughns v. Board of Education,* 758 F.2d 983, 989 (4th Cir.1985). While it is certainly not unreasonable to assume that the date of the order is the date on which the order was signed, as appellants argue, *see* Appellants' Br. at 32–33, we cannot say that the district court abused its discretion in interpreting its order in the manner that it did. We therefore reject appellants' argument that Home Port's action was barred by the terms of the district court's consent order.

Accordingly, because Allen and Ruben are bound by the terms of the consent order entered upon their agreement with Home Port, and because Home Port refiled

132

its action within the time period set forth in the order, we affirm the district court's holding that appellants waived their personal jurisdiction and service of process defenses.

### B.

The district court denied appellant Ruben's motion for relief from default judgment under Fed.R.Civ.P. 60(b)(1). Ruben had argued that he be relieved from judgment because of "excusable neglect." Ruben contends on appeal that the district court's denial of this motion was an abuse of discretion. We disagree.

■ Rule 60(b)(1) authorizes a court to relieve a party of a final judgment because of "excusable neglect." To obtain relief under the Rule, a party must demonstrate *inter alia* that he was not at fault and that the nonmoving party will not be prejudiced by the relief from judgment. *See, e.g., Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 811 (4th Cir.1988). The district court concluded that Ruben had not established either that he was not responsible for the default judgment or that Home Port would not be prejudiced by the requested relief. Both determinations were well within the court's discretion on the record before it. *See Werner v. Carbo,* 731 F.2d 204, 206 (4th Cir.1984) (stating that this court "will not ... disturb[ ]" a district court's decision on a Rule 60(b) motion "absent a showing of abuse of ... discretion").

■ There is sufficient evidence to support the district court's conclusion that Ruben was at fault for the judgment because he intentionally made himself unavailable during the eleven months between the original dismissal and the default judgment. There was testimony from Allen that Ruben knew that Home Port could reinstitute its suit within 180 days, *see* J.A. at 291, and it is undisputed that Ruben never informed Harper or the district court of his whereabouts. If the district court credited Allen's testimony that Ruben was aware that suit could be reinstituted within a short period of time, it could reasonably conclude, as it did, that Ruben purposely did not inform his attorney or the court of his whereabouts for the "ulterior motive[ ]" of avoiding process. *Id.* at 416. Such a conclusion is further supported by the testimony that persons employed by Adventurent, the successor corporation to IYG of which Allen and Ruben were shareholders, appeared intentionally unwilling to assist Harper in locating the defendants. Harper indicated, for example, that Adventurent's attorney essentially refused to assist him in locating Ruben. *See id.* at 255–56. Harper also testified that his secretary found the staff at Adventurent "generally uncooperative" and unwilling to provide assistance in locating Ruben. *See id.* at 388. This conclusion is also supported by the fact that Ruben apparently did receive correspondence when he wished; he had received a copy of the default judgment itself within days of its entry. *See id.* at 284.

■ There was also substantial evidence to support the district court's determination that Home Port would be prejudiced if the default judgment were vacated. By the time Ruben's motion to vacate was filed, IYG had ceased operations and at least two of the defendants could not be found. There was also evidence that one of Home Port's key witnesses, the former controller of IYG who had maintained the financial records of the corporation, had disappeared and that Home Port would have difficulty reconstructing its documentary evidence. *See id.* at 411–12.

Therefore, we affirm the district court's decision to deny Ruben's Rule 60(b)(1) motion.

### C.

■ Allen also moved for relief from default judgment on the same facts underlying Ruben's Rule 60(b)(1) motion. Because he made his motion more "than one year after the judgment ... was entered," however, he could not seek relief under Rule 60(b)(1). He therefore moved for relief under Fed.R.Civ.P. 60(b)(6), which permits the court to vacate a final judgment for "any other reason justifying relief from the operation of the judgment." The dis-

trict court denied Allen's motion for the same reasons it denied Ruben's motion.

It is apparent from the fact that Allen relies upon the same evidence and the same arguments that Ruben relies upon that Allen's Rule 60(b)(6) motion is merely an attempt to circumvent the time limitations under Rule 60(b)(1). A litigant may not move for relief under Rule 60(b)(6) in order to circumvent the applicable time limits on motions under other subsections of Rule 60(b). *See Great Coastal Express, Inc. v. International Bhd. of Teamsters of Am.,* 675 F.2d 1349, 1355 (4th Cir.1982), *cert. denied,* 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983). We therefore affirm the district court's denial of Allen's motion.

### D.

 Both Ruben and Allen argue finally that the district court abused its discretion in imposing default judgment as a sanction for the defendants' failure to participate in discovery. *See* J.A. at 62–63. We disagree.

Two separate provisions of the Federal Rules of Civil Procedure provide for the entry of default judgment. Under Rule 37, a court may issue "[a]n order ... rendering a judgment by default" if a party disobeys a discovery order issued under Rules 35, 37(a), or 26(f), *see* Fed.R.Civ.P. 37(b)(2)(C), or if a party fails to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection, *see* Fed.R.Civ.P. 37(d). Default judgment is also available under Rule 55 "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." Fed.R.Civ.P. 55(a).

The district court did not recite whether it was issuing its default judgment pursuant to Rule 37 or Rule 55. The court identified three justifications for the order: "(a) lack of the Defendants' cooperation in discovery matters; (b) refusal of the ... Defendants to submit to depositions; and (c) failure of the ... Defendants to participate in prosecution and defense of the above-captioned matter." J.A. at 62. Ap-

pellants contend that the default judgment was ordered under Rule 37, *see* Appellants' Br. at 44–46, and that because they did not commit any of the discovery abuses enumerated in that rule as predicates to default, the court abused its discretion in entering the default judgment.

The court's reference to the defendants' failure to cooperate in discovery and to submit to depositions supports the appellants' characterization of the order as one entered under Rule 37. The other asserted basis for the court's ruling, however, was that the appellants "fail[ed] ... to participate in prosecution and defense" of the action. This ground, if supported by the record, is sufficient to permit us to treat the order as one entered under Rule 55. A review of the record reveals that there is ample evidence to support a finding that the defendants did fail to defend the action. The defendants did not appear at the show cause hearing, *see* J.A. at 60, and they did not respond to certified notices sent by the court, *see id.* at 63. Counsel for both sides in fact repeatedly reminded the court that none of the defendants participated in the defense of Home Port's suit. *See id.* at 46–56, 58–60. Thus, even if we assume that the district court lacked authority in this case to impose default judgment under Rule 37, its judgment nonetheless would be authorized under Rule 55 because of the defendants' failure to defend. We therefore affirm the court's decision to enter default judgment on the ground of appellants' failure "to plead or otherwise defend as provided by" the Federal Rules of Civil Procedure. Fed.R.Civ.P. 55(a).

### CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED.