**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1481**

YOUNG AGAIN PRODUCTS, INCORPORATED, A Maryland Corporation,

Plaintiff - Appellee,

v.

JOHN ACORD, a/k/a John Livingston; MARCELLA ORTEGA, d/b/a
Young Again Nutrients, d/b/a Young Again Nutrition,

Defendants - Appellants.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Roger W. Titus, District Judge.  (8:03-
cv-02441-RWT)

Argued:  October 26, 2011          Decided:  December 23, 2011

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the
opinion, in which Judge Wilkinson and Judge Motz concurred.

**ARGUED:** Joe Alfred Izen, Jr., Bellaire, Texas, for Appellants.
Mark A. Freeman, FREEMAN & FREEMAN PC, Rockville, Maryland, for
Appellee.  **ON BRIEF:** Thomas R. Freeman, FREEMAN & FREEMAN PC,
Rockville, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal arises from the district court's entry of default judgment in the amount of $3,832,832 against John Acord and his mother, Marcella Ortega (collectively, the "Appellants"), pursuant to Federal Rules of Civil Procedure 16(f) and 37(b)(2)(A)(vi). In addition to appealing the default judgment, Acord appeals the district court's earlier award of Rule 11 sanctions against him in the amount of $24,357 and the order incarcerating him for civil contempt for his refusal to pay that amount. For the reasons that follow, we affirm. We find that Appellants were adequately put on notice as to the consequences of their actions, and that their intransigence warranted no lesser sanctions.

I.

A. The Complaint and Counterclaims

On August 20, 2003, Young Again Products, Inc. ("Young Again") filed a complaint in the U.S. District Court for the District of Maryland against Acord and Young Again Nutrition ("Nutrition")[1] for trademark and copyright infringement, as well

_____

[1] There is some dispute about the proper name of the company, and the different courts involved in this case have alternated between Young Again Nutrition, see Young Again (Continued)

2

as breach of contract and other state-law claims.[2]  Acord and Nutrition filed a motion to dismiss for lack of personal jurisdiction and for improper venue.  In the alternative, they sought a transfer of venue to the Southern District of Texas. The court denied the motion, holding, in pertinent part, that venue was proper because the contract at the center of this dispute was entered into in Maryland and because Appellants' company purposefully directed Internet traffic into and made sales in Maryland.  Young Again Prods., Inc. v. Acord, 307 F. Supp. 2d 713, 718 (D. Md. 2004).

Young Again filed a motion for a preliminary injunction to enjoin Appellants from using Young Again's trademarks, the name of Young Again's president, Roger Mason, and Mason's copyright-protected works.  The court granted Young Again's motion on March 25, 2005.  Thereafter, on March 29, 2005, Acord filed counterclaims against Young Again and Mason for, inter alia,

Prods., Inc. v. Acord, 307 F. Supp. 2d 713, 714 (D. Md. 2004), and Young Again Nutrients, LLC, see Acord v. Saenz, 2009 U.S. Dist. LEXIS 77274 at *1 (S.D. Tex. 2009).  Acord operated this company with Ortega.

[2] Although once friends, Appellants and Young Again pursued a scorched-earth policy for resolving this dispute and are now embroiled in litigation nationwide.  Several previous decisions have set forth the history of their disagreement.  See Young Again Prods., Inc., 307 F. Supp. 2d at 714, Dodart v. Young Again Prods., Inc., 2006 U.S. Dist. LEXIS 72122 (D. Utah 2006), Saenz, 2009 U.S. Dist. LEXIS 77274.

libel, defamation, and tortious interference with Appellants'
business. Young Again filed an amended complaint on May 26,
2004 naming Ortega as an additional defendant.

B. Young Again's Motions to Enforce the Injunction

On April 16, 2004, Young Again filed its first motion to
enforce the preliminary injunction and for contempt against
Acord, alleging that he was continuing to use Young Again's
trademarks and Mason's name, despite the injunction.
Thereafter, on May 25, 2004, the parties entered into a consent
injunction in which Appellants agreed to cease using Young
Again's trademarks and Mason's name, both parties agreed to
refrain from making disparaging remarks about the other, and
Mason agreed not to interfere in Appellants' business in any
way.[3] Although it declined to sanction Appellants, the district
court ordered Appellants to pay Young Again's "costs and
attorneys' fees of $1,831.50 incurred in connection with [Young
Again's] Motion To Enforce." J.A. 418.

Young Again filed a second motion to enforce and for
contempt on Jun 21, 2004. This time, Young Again alleged that

---

[3] At oral argument, Appellants alleged that the consent
injunction was something other than an agreement in an effort to
discredit the district court's actions. We disagree. Through
the consent injunction, the parties voluntarily agreed to bind
themselves to certain court-enforced norms of behavior for the
duration of the litigation.

Appellants violated the May 25 consent injunction by sending a memorandum to their distributors that Young Again had not approved and that contained derogatory remarks about Mason. Although the district court found that Appellants' distribution of the unilaterally prepared memorandum did not violate the express terms of the consent injunction, it warned them that the memorandum was "neither in form nor in substance what the court contemplated would have been sent in accordance with the applicable provision of the Consent Injunction." J.A. 509. On August 5, 2004, the district court entered an order instructing the parties to work together to draft a notice to the Appellants' distributors explaining that they were permanently enjoined from using certain trademarks.

As the litigation lurched forward, Young Again sought to have the district court reconsider its August 5th order and both parties moved to extend the discovery deadline. In an August 24, 2004 order, the district court denied Young Again's motion to reconsider, but since the parties had not agreed on a notice to Appellants' distributors, did specify the notice that Appellants had to send to their distributors. The court also granted the joint motion to extend discovery deadlines, but in bolded, underlined, and italicized text, warned the parties that "no further extensions will be granted." J.A. 523.

5

On September 3, 2004, Young Again filed its third motion to enforce and request for an "order to show cause why [Appellants] should not be held in contempt for willful violation of the injunction and the decrees of this court, and for expenses, including attorney's fees." J.A. 526. Appellants responded that they had not received proper notice of the violations. Acord also submitted a declaration explaining how he and Nutrition had "used [their] best efforts to remove all of the Young Again Products goods from the Internet web sites operated by Young Again Nutrition" in order to comply with the injunction. Young Again maintained that the ongoing violations were too blatant to be oversights. J.A. 555-58.

At a hearing on November 9, 2004, the court "reluctantly" denied Young Again's motion because Appellants did not have sufficient notice to correct the alleged violation. J.A. 3556. The court stated that it was "not exactly pleased with [Appellants'] approach to compliance with this injunction." J.A. 3555. The court complained that Appellants were "playing the bubble game, pushing a bubble down one place that pops up in another." J.A. 3556. The court contemplated sanctions but noted instead that it did not

> think, though, because of the freshness of this
> particular aspect of non-compliance to the injunction
> that [it] can start imposing sanctions today, but--and
> it may very well be that if there's additional

6

discovery that a serious violation could be addressed if this is not redressed immediately by the defendant.

J.A. 3557-58. The court continued:

But at this stage, with the record as limited as it is in developing the degree to which the [Appellants have] been circumventing the letter or the spirit of this injunction, I'm not prepared to enter sanctions today, but I will make certain that it's loudly and clearly on this record that I view the parameters of the existing injunction as more than adequate to address activities of the type that appear to have been identified in the hearing today.

J.A. 3558-59. The court stated that the Appellants had "seven days to fix this problem" and that "if this stuff continues to happen then we will be back here and we will be talking about imposing sanctions, because I just don't think that this can go on any further." J.A. 3559.

The court's November 12 order reiterated the frustration it expressed at the hearing. It stated that the court found that the Appellants' compliance had been "less than exemplary" and that "any failure by the [Appellants] to conform their on-line activities to the requirements of the consent injunction within seven days . . . may result in the levying of civil penalties against the [Appellants]." J.A. 621.

Appellants ignored this seven-day deadline. On November 19, 2004, Young Again filed its fourth motion to enforce and request for sanctions. The court held another hearing on February 3, 2005 to determine whether the Appellants or third-

7

parties not under the Appellants' control were responsible for the continued misuse of Young Again's intellectual property. Although concerned that some of the ongoing noncompliance was not innocent, but was the product of "'wink, wink; nod, nod' relationships with some of the[] so-called retail customers," the court declined to impose sanctions. J.A. 3384. The court was nonetheless clear in its warning to the Appellants:

> I want to make sure that the [Appellants do not] feel real good about what I'm saying. I'm saying that when I get better information that presumably will come from deposition--live testimony from somebody from an internet search engine that indicates that through some devious means that this court's injunction has been violated, they better rue the day that I find out . . . everybody can hear it loud and clear. If it turns out games have been played with search engines and relationships with other people are not what they're claimed to be and this whole thing is a sham to get around your marks and your consent injunction, then they better start moving some money around to be able to respond for it.
>
> On the other hand, I need to be reasonably confident when I'm using the contempt powers of the court that I'm reasonably precise about it. And as I said, I see a lot of smoke in front of me.

J.A. 3384 (emphasis added). The court then addressed Appellants' counsel, Lawrence E. Laubscher,[4] directly saying, "I want to make sure . . . your client hears loud and clear that

---

[4] We depart from our usual practice of treating counsel's acts as acts of their clients in this case both because Appellants attempt to blame the default judgment on Laubscher, and because Acord decided to proceed pro se for the latter part of this litigation.

8

I'm not happy with how fast there was compliance with some aspects of this injunction." J.A. 3386. The court closed the hearing by reiterating that sanctions were coming if it discovered that Appellants had flouted the injunction. The court did not rule on Young Again's motion at this hearing.

## C. The Discovery Process

The discovery process progressed slowly at best. On April 15, 2005, Young Again filed its first motion to compel Appellants to produce documents. Although the parties reached an agreement resolving this first discovery dispute, the court had to intervene repeatedly.

The court originally planned to rule on Young Again's fourth motion to enforce and request for sanctions after the completion of discovery on June 1, 2005. When the discovery deadline was extended into 2006, however, the court denied the motion without prejudice, citing Congress's "disapprobation of stagnant motions that remain pending for an abnormally long time." J.A. 909.

In the middle of discovery, on April 24, 2006, Laubscher moved to withdraw from representation of Acord and the court granted his motion.[5] On July 7, 2006, Young Again filed a second

---

[5] In his May 23, 2009, Motion to Withdraw from representing Ortega, discussed below, Laubscher explained that he withdrew (Continued)

9

motion to compel, this time alleging that the defendants were improperly designating all documents they produced as "confidential, attorneys['] eyes only." J.A. 998-99.

The court finally decided Young Again's July 7, 2006, motion on June 19, 2007. The court explained that it had spent 28 hours reviewing documents only to find that many were blank, consisted of advertisements, or otherwise lacked any confidential information, much less information warranting the "attorneys' eyes only" designation. J.A. 1043-44. The order noted that Laubscher "conceded that he has not reviewed all of the electronically stored documents because of the volume of the records," yet he let Acord, who was ostensibly proceeding pro se, designate them "attorneys' eyes only." J.A. 1043-44. The court struck Appellants' designation.

## D. The Rule 11 Sanctions

Not having an attorney did not deter Acord from vigorously litigating. In an email, he characterized his own conduct as "filing numerous motions to quash, discovery requests on Mason, and other actions that will hopefully deplete his war chest." J.A. 1106A.

---

from representing Acord and Young Again Nutrition after he was denied payment of $75,537.70 for services and disbursements.

On December 7, 2007, Acord filed a pro se motion to enforce, requesting sanctions against Young Again, and seeking to dismiss the suit against him. In response, Young Again moved for sanctions against Acord under Federal Rule of Civil Procedure 11, stating that the purpose of Acord's motion was harassment and delay. On August 28, 2008, the district court denied Acord's motion, finding that he came before the court "with, at best, unclean hands" and that his motion was "utterly devoid of any merit whatsoever." J.A. 2174. At a hearing on November 17, 2008, the district court ruled on Young Again's motion and ordered sanctions assessed against Acord in the amount of $24,357. The court found that his motion "was filed for an improper purpose of harassment, causing unnecessary delay, and/or needlessly increasing the costs of litigation, and that his pleading contained numerous factual allegations without evidentiary support." J.A. 2306.

Both Laubscher and Acord were present at the November 17, 2008, hearing. In addition to sanctioning Acord, the court scheduled a jury trial in the case and imposed a strict pretrial schedule for the parties to follow. The court told the parties: "[Y]ou need . . . to read our rule on pretrial procedures. I take that very seriously . . . [T]he pretrial preparation process is one that involves a significant level of joint endeavor with people operating in good faith with each other and

11

not playing around." S.J.A. 118-19. The court instructed the parties to submit a pretrial order by March 2, 2009.

### E. The Default Judgment

Despite the court's admonition about the need for the parties to cooperate and the local rules governing the pretrial process, Ortega did not respond to Young Again's efforts to make pretrial arrangements. Instead, Laubscher waited until one business day before the filing deadline for the pretrial order, a Friday, to begin emailing his proposals. Even then, he failed to attach anything to his email. The next Monday, he waited until 4:20 pm on the filing date to forward the remainder of his proposed joint pretrial order. Laubscher complained that Young Again's counsel did not notify him that the attachment was missing or respond to his emails on Saturday. Laubscher later testified that he had repeatedly attempted to contact Ortega but that she never responded, so he proceeded without guidance from his client. In any event, Laubscher's belated filing left no time for the parties to negotiate the order. As a result, Young Again did not incorporate any material from Ortega into its order.

On March 2, 2009, Young Again filed a motion for default judgment against Acord, alleging that he failed to communicate in preparing for pretrial and that he had failed to pay the sanctions assessed against him. On March 17, 2009, Young Again

12

filed a motion for default judgment against Ortega, alleging that she too had failed to participate in the pretrial process.

On March 19, 2009, the court sent the parties the following reminder about the pretrial proceedings:

> The Court wishes to remind the parties of the pretrial conference and hearing on all pending motions scheduled for Monday, **March 23, 2009**, at **2:00 p.m.** At that time, the Court intends to hear argument on all pending motions--Paper Nos. 247, 256, 258, and 259. The Court notes that Paper No. 259 was filed on 3/17/09. If Defendant Ortega wishes to respond to that motion, she is directed to file a response by **March 20, 2009**, at **4:00 p.m.**
>
> Despite the informal nature of this ruling, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

J.A. 2602 (emphasis in original). Relevant to this appeal, Paper No. 256 is Young Again's motion for default judgment against Acord; Paper No. 258 is Young Again's motion for sanctions and civil contempt against Acord; Paper No. 259 is Young Again's motion for default judgment against Ortega.

At the scheduled pretrial hearing on March 23, 2009, the court heard extensive testimony about the failure of Appellants to cooperate in the pretrial process. Laubscher admitted that he knew that Appellants missed the deadline to comment on the pretrial order, but having not received any instructions from Ortega he made the 4:20 pm filing in an effort to preserve her rights. He maintained that Ortega wanted to defend the case, but the court disagreed. The court stated that it was

13

"attributing what took place in this case directly to Marcella Ortega" and that he could not fault her counsel, Laubscher, because "it's clear[] his indifference to his obligations . . . are because he was in effect disabled by his client from being able to perform the obligations that he had to this court." J.A. 3329. Acord admitted that he had no excuse for his failure to participate in the pretrial process other than "it just boggles my mind and I don't know how to do it. I don't have an attorney up here." J.A. 3305.

The court found that both Acord and Ortega had failed to participate meaningfully in the litigation and granted default judgment against them in the amount of $3,832,832.40.[6] The court also dismissed Acord's counterclaims.

At that same hearing, Laubscher requested and was granted permission to withdraw from his representation of Ortega, citing Ortega's failure to communicate with him or pay him since November 2008. The record contains three letters from Laubscher to Ortega dated December 29, 2008, February 23, 2009, and March 4, 2009, explaining his need for direction during the pretrial process. The first two letters also gave Ortega notice that he would withdraw as counsel if not paid. The third informed

---

[6] The court based this number on the report of Young Again's expert, which estimated the revenue lost as a result of Appellant's infringement. It also included contract damages and attorneys' fees.

14

Ortega that she was in violation of their Representation and Fee Agreement and that Laubscher would be moving to withdraw under Local Rule 101.2 for nonpayment of fees and "failure to cooperate in your defense." J.A. 2871. Laubscher also emailed Acord about his inability to continue representing Ortega without payment.

## F. Acord's Incarceration

The court ordered Acord to pay the sanctions against him--or explain the financial circumstances that rendered him unable to pay--within thirty days of March 25, 2009. Acord did neither. Consequently, the court ordered him to appear at a hearing on July 7, 2009, to show cause why he should not be held in civil contempt and incarcerated. Acord moved for a continuance but the district court denied his motion. Acord failed to appear as ordered. On August 6, 2009, the district court held Acord in contempt and ordered him incarcerated until he purged himself of the contempt.[7]

---

[7] Acord filed a petition for habeas corpus in the Southern District of Texas claiming that his continued incarceration violated his Due Process rights because he was unable to pay the sanction and thereby purge himself of the contempt. He also claimed that producing the documents requested by the Maryland district court would violate his Fifth Amendment privilege against self incrimination. The Southern District of Texas found neither argument persuasive and denied his motion. Saenz, 2009 U.S. Dist. LEXIS 77274, at *11-30.

(Continued)

Appellants claim that the district court abused its discretion when it entered default judgment for $3,832,832.40 against them. In addition, Acord argues that the district court abused its discretion when it awarded Young Again sanctions pursuant to Federal Rule of Civil Procedure 11. Acord also appeals the district court's order holding him in civil contempt for failure to pay the sanction. Finally, Appellants claim that the district court erred in its March 14, 2004, order finding that venue in the District of Maryland was proper and denying their request to transfer venue. We will consider each issue in turn.

A.

We turn first to the default judgment. This court reviews for abuse of discretion a district court's grant of sanctions under Rule 37, including the imposition of a default judgment. Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998). "In the case of default, the range of discretion is more narrow than when a court imposes less severe sanctions." Hathcock v. Navistar

---

Acord did not pay the sanction, and was therefore not released, until November 17, 2009.

16

Int'l Transp. Corp., 53 F.3d 36, 40 (4th Cir. 1995) (internal quotation marks omitted).

1.

The district court imposed a default judgment on the defendants pursuant to Rules 16(f) and 37(b)(2)(A)(vi) based primarily on their failure to participate in the pretrial process. Under Rule 16(f)(1),

> [o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>
> (A) fails to appear at a scheduling or other pretrial conference;
>
> (B) is substantially unprepared to participate--or does not participate in good faith--in the conference; or
>
> (C) fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f)(1). Rule 37(b)(2)(A)(ii)-(vii) lists a variety of sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims," "striking pleadings in whole or in part," "staying further proceedings until the order is obeyed," "dismissing the action or proceeding in whole or in part," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vi). We have previously upheld default judgment as a sanction for discovery abuses under Rule 37. See Anderson, 155 F.3d at 504-05. We see no reason to treat misconduct during the pretrial

17

process as different from misconduct during the discovery process.  See Newman v. Metro. Pier & Exposition Auth., 962 F.2d 589, 590-91 (7th Cir. 1992) (holding that failure to participate in the pretrial process is a ground for default judgment).

Recognizing the seriousness of the imposition of default judgment, we have instructed district courts to apply a four part test when determining appropriate sanctions under 37(b): "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary . . .; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions."  Mut. Fed. Sav. and Loan Ass'n v. Richards & Assoc., Inc., 872 F.2d 88, 92 (4th Cir. 1989) (citing Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503-05 (4th Cir. 1977)).  In Mutual Federal Savings and Loan Association, we noted that the Wilson factors balance a "district court's desire to enforce its discovery orders" and a "party's rights to a trial by jury and a fair day in court."  872 F.2d at 92.

We emphasize, however, that our review of the district court's determination is a deferential one, in recognition that "it is the district court judge who must administer (and endure)" the proceedings.  Lee v. Max Int'l, LLC, 638 F.3d 1318, 1320 (10th Cir. 2011); see also id. (advising appellate courts not "to draw from fresh springs of patience and forgiveness").

18

This court has "emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction." Hathcock, 53 F.3d at 40. However, in a similar context--the failure to prosecute a case--the Supreme Court has said "[n]or does the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing necessarily render such a dismissal void." Link v. Wabash R.R., 370 U.S. 626, 632 (1962). Indeed, in the context of sanctions for abuse of discovery, the Supreme Court has warned that appellate courts "tend[] . . . to be heavily influenced by the severity of outright dismissal as a sanction . . . But here, as in other areas of the law, the most severe in the spectrum of sanctions . . . must be available to the district court." Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 642-43 (1976).

2.

Appellants Acord and Ortega argue that the district court abused its discretion when it entered the default judgment because it did not properly apply the Wilson factors and did not warn them that it was considering entering default judgment. Although the district court did not expressly articulate these factors, we will nevertheless uphold a default judgment when it is clear from the record that the district court did not abuse its discretion. See Mobil Oil Co. de Venezuela v. Parada

19

Jimenez, 1993 U.S. App. LEXIS 4648 at *8 (4th Cir. March 9, 1993) (unpublished). In analyzing the Wilson factors on these facts, we find such clarity here.

a.

First, the record reflects a pattern of noncompliance suggesting bad faith. See Mut. Fed., 872 F.2d at 93. The district court was repeatedly compelled to admonish the Appellants, even after it warned them that it was going to take the pretrial process "very seriously." J.A. 118. Appellants made no effort to acknowledge their obligations.[8] Acord did not even attempt to prepare for pretrial proceedings, filed meritless motions and made little, if any, effort to comply with the district court's injunctions. He described his litigation strategy as "hopefully deplet[ing] [Mason's] war chest." J.A. 1106A.

While Ortega's behavior may have been less egregious than Acord's, it nevertheless manifested an identical posture of resistance. Moreover, her efforts to pin the blame on her former attorney are unpersuasive. The record contains three letters from Laubscher to Ortega, as well as emails from Laubscher to Acord, in which Laubscher explains that he needs

---

[8] We previously upheld default judgment after a mere 13 months of "subterfuge." Mut. Fed., 872 F.2d at 94. Here, Ortega has disregarded the court for nearly 6 years.

20

both Ortega's cooperation and payment for his services. Laubscher continued to represent Ortega even after warning that he was going to withdraw if his date for payment came and went. Moreover, we have previously upheld a district court's entry of default judgment against defendants who so failed to communicate with their attorney that their attorney withdrew from the representation. Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 132 (4th Cir. 1992). On these facts, we cannot interpret Ortega's continued disregard for the district court as anything other than bad faith.

b.

Turning to the second Wilson factor, we believe there was prejudice here. The district court specifically explained that Appellants' noncompliance prejudiced Young Again:

> The concern that I have as a judge trying to try a case is that I can't try cases fairly to both sides if I don't have . . . meaningful participation in the significant endeavors required to go to trial and to comply with the pretrial rules of this court. Those rules are designed to provide for a fair trial.

J.A. 3329. Moreover, we note that this is an intellectual property case in which Appellants allegedly continued to use Young Again's property despite injunctions to the contrary. Given the impermanence of the internet, over which Appellants traded Young Again's work, each day of delay is a day over which evidence of the original infringement may degrade. Moreover,

21

Acord himself stated that his goal was to force Mason to "deplete his war chest" defending this litigation. J.A. 1106(A)

c.

With respect to the third Wilson factor, we have previously found that "stalling and ignoring the direct orders of the court with impunity" is "misconduct" that "must obviously be deterred." Mut. Fed., 872 F.2d at 93. Appellants' behavior can only be described as ignoring the court's orders, even when the court took additional, non-required steps to ensure that they were aware of their obligations. For example, on March 19, 2009, the court sent a memorandum to the parties "to remind [them] of the pretrial conference and hearing." J.A. 2602. As discussed above, Ortega refused to participate in the pretrial process with her attorney, despite the district court's orders. Instead, she left her attorney to make last minute filings aimed at preserving her rights, in consequence of which the case could not efficiently move forward. Acord obstructed proceedings by making frivolous filings while ignoring mandatory filings. We find this conduct, especially when taken with their other sloppy tactics, such as their overuse of the "Attorneys' Eyes Only" designation, to be precisely the kind of behavior that courts need to deter.

d.

Turning to the fourth <u>Wilson</u> factor, since Acord and Ortega showed no interest in taking the steps necessary to defend this case, we see no effective lesser sanction. Looking first at Acord, the court had already issued sanctions under Rule 11 to no avail. Acord's statement that he did not participate in the pretrial process because it "boggles [his] mind" further suggests that lesser sanctions would be futile. J.A. 3305. Acord could have hired an attorney, but chose not to, then sought to effectively excuse himself from proceedings due to his pro se status. While we are sympathetic to the challenges faced by pro se litigants, we cannot exercise that sympathy unless they at least try to participate.[9] And although the district court could indeed have imposed monetary sanctions against Ortega in the first instance, given the pattern of resistance in which she engaged in concert with Acord, we cannot say that the district court abused its discretion in entering the default judgment against them both.

---

[9] Acord claims that he intended to participate in the pretrial proceedings by adopting Ortega's pretrial submissions but he did not seek to do so until the pretrial hearing, well after the filing deadline. This is too late. The district court set deadlines, which he ignored.

23

3.

Appellants argue that default judgment is improper because the district court did not warn them of the possibility of default judgment. As an initial matter, we believe that the court's March 19, 2009, memorandum to the parties in which it said that it planned to rule on Young Again's motions for default judgment, gave Appellants notice that default judgment was a possibility.

While it is true that the district court did not explicitly warn Appellants that it would definitely enter a default judgment at the March 23 hearing, we find that they surely had constructive notice that it might: the district court had expressed its displeasure about poor compliance with the injunctions;[10] Young Again had repeatedly sought sanctions and the district court said it was on the verge of sanctioning Appellants several times;[11] the district court then said that it took the pretrial process very seriously, even sending Appellants a memorandum telling them that it was going to rule on Young Again's motions for default judgment, and yet

---

[10] For example, on August 3, 2004, the district court stated that Appellant's compliance with the injunctions was "neither in form nor substance what the court had contemplated." J.A. 509.

[11] For example, on November 9, 2004, the district court explicitly contemplated sanctions saying, "I just don't think that this can go on any further." J.A. 3559.

24

Appellants still took no steps to participate in this pretrial process.  See Adams v. Trs. of the N.J. Brewery Emps. Pension Trust Fund, 29 F.3d 863, 871 (3d Cir. 1994) (finding that a party "had adequate opportunity to defend itself against dismissal without such formal notice" where the other party had moved for sanctions).  Although the district court could have provided more specific notice of default, it certainly made the intent to act on its displeasure manifest.

While we believe that Ortega had sufficient notice of the possibility of default, it is even clearer that Acord did.  On at least two additional occasions the district court warned Acord that it was unhappy with his behavior.  The first was the May 25, 2004, hearing at which the court departed from the traditional American rule of each side paying its own costs and ordered Acord to pay Young Again's costs and fees related to its first motion to enforce.[12]  The second warning was the imposition of Rule 11 sanctions.  For the foregoing reasons, we hold that the district court provided sufficient notice to support its entry of default judgment against Acord and Ortega.

---

[12] Ortega was not yet a party in the case when the district court entered this order.

25

Appellants contend that the award of $3,832,832.40 was improper. We disagree. The district court took this sum from Young Again's expert Richard S. Hoffman, whose report described Young Again's damages from Appellant's infringement, and which Young Again included as an exhibit in its pretrial submissions. Appellants never objected to this report either during the March 23, 2009, hearing, during which Young Again presented it as evidence, or during the pretrial process during which the Appellants were supposed to be cooperating with Young Again. Appellants now contend that the report was hearsay and claim that the district court is relying on the statements of lawyers, which "are not evidence." Appellant's Br. 54. Federal Rule of Civil Procedure 26(a)(3)(B) dictates that a party waives any objections to pretrial disclosures unless it raises them within 14 days. Since Appellants failed to object to the report within 14 days, they have waived any objections. Accordingly, we find that the district court did not abuse its discretion when it awarded Young Again the sum specified in its expert's report.

## B.

We now turn to Acord's contention that the district court erred when it entered Rule 11 sanctions against him and that it committed further error when it order him incarcerated for failure to pay these sanctions. Rule 11 provides that a court

26

may sanction a party for "presenting to the court a pleading, written motion, or other paper . . . presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or for making factual contentions without evidentiary support. Fed. R. Civ. P. Rule 11(b). We review the imposition of Rule 11 sanctions for abuse of discretion. In re Bees, 562 F.3d 284, 287 (4th Cir. 2009). We review a district court's civil contempt order for abuse of discretion.[13] Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000).

---

[13] Young Again argues that we lack jurisdiction to decide this issue since it was not explicitly included in the notice of appeal. We disagree. Rule 3 of the Federal Rules of Appellate Procedure requires a notice of appeal to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). This court "liberally construe[s] Rule 3(c)'s requirements concerning the sufficiency of the notice of appeal to avoid technical impediments to appellate review." In re Spence, 541 F.3d 538, 543 (4th Cir. 2008) (internal quotation marks omitted). "[A]n error in designating the issue appealed will not result in a loss of appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 771 (4th Cir. 1997) (citation omitted). Whether an appellee is prejudiced is determined by considering "whether the appellee had notice of the appeal and an opportunity to fully brief the issue." Id. We have previously held that arguing the merits of an improperly designated issue in an opening brief is sufficient to put the opposing party on notice. See, e.g., id.; Canady v. Crestar Mortg. Corp., 109 F.3d 969, 974-75 (4th Cir. 1997).

1.

The district court imposed sanctions both because it found that the purpose of Acord's motion was to harass, delay, and increase the costs of litigation and because his motion "contained numerous factual allegations without evidentiary support." J.A. 2306. Acord disagrees with the district court's assessment of his motion and contends that the allegations were true and that the motion was necessary to prevent Mason from defaming Acord. Acord points to no evidence in the record to support this contention.

Furthermore, this does not appear to be a case like In re Bees, in which we found the imposition of Rule 11 sanctions to be reversible error because the erroneous factual assertions in the sanctioned party's filings were isolated, inadvertent, and in good faith. 562 F.3d at 288. Instead, the district court found Acord's motion to be "utterly devoid of any merit whatsoever," and Acord has not presented any argument on appeal that contradicts this assessment. J.A. 2174. On these facts, we cannot find that Acord's meritless motion and other misdeeds were inadvertent lapses, or otherwise in good faith. For these reasons, we find that the district court did not abuse its discretion when it sanctioned Acord.

2.

The district court held Acord in contempt on August 6, 2009, when he skipped a hearing that the district court ordered him to attend after he failed to pay the Rule 11 sanctions within thirty days of March 25, 2009. To establish civil contempt, a movant must demonstrate: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result." Ashcraft, 218 F.3d at 301 (citation omitted). All of these elements are clearly established here. The court assessed sanctions in the amount of $24,357.00 against the defendant on November 17, 2008. Acord had knowledge of these sanctions, and he not only violated the district court's order to pay, but also failed to appear at the show cause hearing regarding his civil contempt and incarceration. He harmed Young Again both by delaying payment and by continuing to delay the proceedings. In light of these flagrant violations, we hold that the district court did not abuse its discretion when it held Acord in civil contempt.

29

Finally, we turn to the sole non-sanctions issue in this appeal. Appellants claim that the district court erred in its March 14, 2004, order finding that venue in the District of Maryland was proper and denying their request to transfer. We review the district court's denial of a motion to transfer venue for abuse of discretion. Saudi v. Northrop Grumman Corp., 427 F.3d 271, 275 (4th Cir. 2005).

We begin by noting that venue is a personal privilege of the defendant that may be waived. Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979). Acord filed his motion to transfer before Young Again amended its complaint to include Ortega. Therefore, Ortega waived her objection to the venue when she admitted venue was proper in her answer to Young Again's amended complaint and thereby failed to object to venue in the district court. See Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 549 (4th Cir. 2006) ("Because a motion under Rule 12(b)(3) is a disfavored 12(b) motion, a defendant will have to raise the forum selection issue in her first responsive pleading, or waive the clause."); United States v. Stewart, 256 F.3d 231, 238 (4th Cir. 2001) ("If an objection to venue is not raised in the district court, the issue is waived on appeal.").

As to Acord, we find that venue in the District of Maryland was proper under 28 U.S.C. § 1391(b)(2), which states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Young Again argues that it entered into an agreement with Acord and Nutrition to resell its products. When ruling on Acord's motion, the district court found that it "must accept for purposes of this motion, the contract between the parties, which underlies the breach of contract claim, was entered into in Maryland, and Internet traffic was directed into Maryland and resulted in sales. Therefore, venue is proper in Maryland." Young Again, 307 F. Supp. 2d at 718.

Acord has not contested the district court's finding that the parties formed the contract in Maryland. Indeed, Appellants now rest their venue argument entirely on the claim that Young Again was not a Maryland corporation in good standing when it filed the original complaint. Since Acord has waived any argument that the parties did not enter into the contract in Maryland, and the injury to Young Again--both from the breach of contract and the intellectual property claims--has occurred in Maryland, we hold that the district court did not abuse its discretion in holding that venue is proper in Maryland. Cf. CIENA Corp. v. Jarrard, 203 F.3d 312, 318 (4th Cir. 2000)

31

(finding venue to be proper in the district where the injury caused by the breach of contract would be felt); <u>Du-Al Corp. v. Rudolph Beaver, Inc.</u>, 540 F.2d 1230, 1233 (4th Cir. 1976) (finding venue to be proper in the district in which partial performance occurred and where steps to form the contract were taken).

## III.

For the reasons discussed above, we find that the Appellants' bad faith throughout this litigation process was sufficiently egregious to justify the extraordinary sanctions imposed on them. Accordingly, we hold that the district court did not abuse its discretion.

<u>AFFIRMED</u>

32